Next case up this morning is Michael v. Antonio Serrato-Perez, case number 015-0392 for the appellant is Christopher Gerke. Pronounced correctly? Yes, sir. Lucky guess. And for the appellee, Thomas Dodegee. Pronounced right? Yes, sir. Thank you. Mr. Gerke, you may proceed, sir. May it please the Court, Your Honors, Counsel? I'd like to focus my argument on the first issue in this brief, but of course I'd be happy to talk about any of the other issues that Your Honors are interested in. In this case, Your Honors, my client's post-conviction petition was erroneously denied after a third-stage evidentiary hearing, in which my client gave unrebutted testimony indicating that trial counsel was ineffective with respect to his advice regarding my client's right to testify. Now, despite opposing counsel's brief... Excuse me. Yes, sir. Unrebutted testimony regarding what? Unrebutted testimony that counsel failed to advise him properly about his right to testify. Okay. Go ahead. Despite opposing counsel's brief, Your Honors, I don't think in the law there's any clear dispute that counsel does certainly have the duty to advise his client about that he has a right to testify and to discuss the advantages and disadvantages of exercising that right so that his client can make a knowing and intelligent determination as to whether to exercise that right. Yet in this case, Your Honor, Antonio Serrato Perez testified that before trial, counsel never met with him in jail to discuss his case or the charges. Counsel never discussed his right to testify with him, never discussed his possible testimony with him, and never prepared him to testify. Didn't Anthony Bruno testify differently to at least some of that? Not to my recollection, Your Honor. I think I... He didn't testify. He spoke to him in the jail before? No. He said specifically that he... He actually specifically said, I don't recall ever meeting with my client in jail. He didn't recall basically any of his interactions with my client. He said he didn't remember speaking with him about his right to testify. He didn't remember speaking about his possible testimony. He didn't remember, as I said, even meeting with him in jail. Nothing my client said with that respect was rebutted by any evidence at this evidentiary hearing. In fact, Your Honor, while trial, counsel didn't remember much of what his interactions with my client... The one thing, the one thing that counsel did remember about my client was that he had extreme difficulty understanding the trial process. My client was... This was his first criminal trial. He was a... He was an immigrant. English was not his native language. Counsel specifically testified, quote, that my client had a very difficult time understanding basic concepts about how the trial was going to work and what different things meant. My client, quote, had no understanding of the process. My client evidently did not even understand, Your Honors, when counsel said that he, quote, broke down very, very simple things and processes into childlike length. My client thought he had been convicted after opening statements. This is not somebody who understands the process. And what that testimony shows is not only that my client was not aware of how a criminal trial works and what its rights are, but also that counsel knew it. And yet, the evidence shows that the unrebutted testimony shows that he did not properly advise my client before trial about his right to testify. Now, the first time, my client did ultimately learn about that he had this right. But the first time that he learned it was in the middle of trial after the state had dressed it. Basically, counsel sprung this decision on him, saying, okay, you can testify if you want to, but you shouldn't, without explaining why he shouldn't, without discussing what his possible testimony was. And again, this is keeping in mind that this was without any prior discussion of what his testimony would be. Counsel evidently just told him not to testify. Presumably, it was part of his strategy. But it couldn't have been a strategic decision because he didn't know what my client was going to say. And even if it was a strategic decision, my client was entitled to understand why counsel was advising him not to testify, and he didn't. And again, my client, Antonio Estrada Perez, by counsel's own admission, did not understand the basic trial processes that go into a criminal trial. And knowing that, knowing that this is the first time he heard about that, pressured my client not to testify. And so my client waived his right, and he indicated that he waived it. Your Honor, what are you arguing here as a standard? That it's the duty of counsel to go over the procedures and make sure that his client understands that it's his right to testify or not, and what this means, and what the risks and everything are? Is that essentially what you're arguing? Basically, Your Honor, yes. What case stands for that proposition? Your Honor, well, there's a number of Illinois appellate court cases that directly state that exact proposition, and there's a number of Illinois Supreme Court cases and federal cases that support that proposition. For example, Your Honor, in In re Joshua, which is a First Sister case from 2011, which is relying on People v. Smith, which is the Illinois Supreme Court case, says, quote, it is defense counsel's responsibility to advise a defendant about his right to testify and to explain any advantages and disadvantages of exercising that right. So I think the – But you've gone beyond that. You not only have to explain it, you have to make sure he understands it and answers all questions. I mean, it sounds like some kind of admonition process for the trial court before you can accept a guilty plea. Well, I think, Your Honor, that because counsel – because, first of all, a criminal defendant has – as Your Honors are well aware, they're the only ones who can waive their right to testify. And in order to waive their right, they have to make a knowing and intelligent decision to do so. So while normally I would agree that if counsel, you know, advises his client about his right to testify and explains the advantages and disadvantages of doing so, and for some reason doesn't know whether or not he understood him, that's all counsel can do. But in this case, counsel knew that our client, that our joint client, which was Sartor Perez, didn't understand basic trial processes. And, again – So pausing right there, therefore what? Because he's supposed to stop, or what's he supposed to do? Well, again, Your Honor – Assuming all this is correct, now what? Well, first of all, Your Honors, I'd like to reiterate that he never – that the evidence is unrebutted, that he never discussed this right at all before trial with my client. Now, the first time this ever came up was in the middle of trial, knowing that my client has trouble understanding these things. And there's no dispute in the record that he did not explain – that he did not explain why he was telling my client not to testify. My client specifically said that he was trying to tell his attorney what he would testify to, and he kept – and counsel kept cutting him down, saying, I'll take care of it. And counsel – and so my client indicated he felt as though he had no choice. There's nothing in the record indicating that my client knowingly acquiesced to counsel's strategic decision not to testify based on, you know, his advice relating to what his testimony would be. There's no evidence in the record indicating that counsel even knew what my client would testify to. And, in fact, there's evidence in the record directly rebutting that, because my client, again, gave uncontradicted testimony that he never discussed before trial. So I don't think that counsel is abiding by their duty to properly advise their client. If they never discussed – So it's not enough for the trial court to have done so in this case? Not under the facts of this case, Your Honor. So that's because he didn't understand it well, or what? Why not – you're suggesting that under the facts of another case, the trial court's admonitions would be adequate, right? And if we didn't have testimony – this is a rare case, Your Honor. This is a rare case. We actually have an evidentiary hearing where these discussions with counsel are actually laid out. I do think that, you know, in general, if this were a direct appeal with no evidentiary hearing record, it's undisputed that, you know, People v. Smith says that, you know, this duty of counsel is so ingrained that courts presume that counsel did abide by this duty, and that when a defendant waives their right to counsel, it's presumed that they did so in accordance with counsel's strategic advice on direct appeal. Waive the right to testify. Oh, I'm sorry, yes, waive the right to testify, yes, on direct appeal. But here we have an evidentiary hearing record where our client, Mr. Serrato Perez, specifically testified that we never discussed this before a trial. He never met with me before a trial. The first time I learned about this was in the moment I had to make the decision with no preparation. I felt as though I didn't have a choice because I hadn't been prepared to testify, and counsel was pressuring me not to testify. And the record does not reflect that counsel ever explained why he was giving him this advice. If the record showed that counsel said, you know, knowing that your testimony is going to be this, I think this is going to happen, but it's your choice, and then he may waive his right to testify, then we wouldn't even have an issue here, Your Honors. But that's not what happened. And counsel specifically said that he did not remember, again, he didn't remember his interaction with my client. He said that while he agreed that he probably told my client not to testify to the extent of his testimony on that, but he didn't actually remember doing it or not. So, again, we have unremitted testimony from my client that these discussions never happened before trial, and that the first time he learned of it was in the middle of trial. And, again, while he – Now, you've emphasized that repeatedly. What case stands for the proposition that it's not just you have to do it, but you have to do it before trial and the middle of trial is adequate? I'm not – to be clear, Your Honors, I'm not saying that there are specific rules about doing it before trial and in the middle of trial. The reason I'm emphasizing that is because it shows that counsel didn't abide by his duty to advise my client of his rights and to discuss – Okay, well, then there's a duty he has to do this before trial? No, Your Honor. If the record showed or counsel had testified that in the middle of trial, I took him aside and explained to him that, you know, I listened to what his testimony would be. I explained to him why I thought it was a bad idea to testify. And then he chose not to testify. Again, we wouldn't have that issue here. But that's not what happened. According to the defendant, didn't Anthony Bruno say, I'm recommending you don't testify because I don't think your testimony would be a good outcome? Yeah, he said he was pressured not – he said – but there's no indication in the record that he explained why. So it's not – it's – defense counsel says, I don't think you should testify. I don't think it's going to be a good outcome. And then he also said, but you can testify if you want to. And then the defendant decides to accede to defense counsel's advice. That's not enough? I have two responses to that, Your Honor. The first is that when counsel gave that advice – first of all, counsel's advice has to be strategic. And in – But pausing right there. Yes. When you say it's got to be strategic. Yes. What does that mean, that he's got to explain it somehow beyond just he's a defense attorney who's been doing this and he tells him, I don't think you should testify? I'll have two responses to that, Your Honor. Okay, go ahead. The first is that in order to make a strategic decision that a – that your defendant should not testify, you actually should have to know what their testimony will actually be. And again, the record's undisputed that they did not discuss this before trial. So when counsel said, I don't think you should testify, there's nothing in the record indicating that he had any idea what my client would say. And when he testified at the evidentiary hearing, he gave no indication that he knew what my client would say. And I forgot my second point, Your Honor, but the basic idea here is that my client, Antonio Soprano Perez, in order to properly exercise his right to testify or not to testify, has to make not only a knowing decision that he has the right, but an intelligent decision, meaning that he has to understand the consequences of exercising that right within the context of an individual case. So his lawyer is saying, I don't think it's a good idea, it's inadequate. Yes, I think that's inadequate if your lawyer just says, don't testify, without explaining – without you telling them what your testimony would be and without explaining why you shouldn't testify. I don't think that's – What case stands for that proposition? Well, Your Honor, again, this is a rare case where we have counsels admit his lack of advice before a trial, spring this on his client in the middle of trial, knowing that his client doesn't understand basic trial processes. Well, why does that matter? Well, it matters because the – If the lawyer doesn't think it's a good idea for him to testify, what you're now – and in fact, been around this a long time, most defense attorneys I know would say, it's not a good idea for you to testify, just as a matter of course. And I – But now you're saying, but that's not good enough. You have to explain it and make sure he understands it. You know, kind of an admonition process. What case stands for that, and why should we so hope? Well, Your Honor, I'm drawing these cases – I'm drawing from the idea that the defendant has to make a knowing and intelligent decision. And Peel v. Hernandez, for example, is a second district case, I believe, that specifically says that it's the trial counsel's duty to safeguard a person's right to testify. So you said, according to your client, Mr. Brewer told me I could testify if I wanted to, as did the trial court. Yeah, and that was for the first time in the middle of trial. Get in the middle of trial, counsel. You keep going back to that. I do. This is an important factor. If this whole discussion occurred prior to trial, there'd be no problem? If this discussion occurred prior to trial, in addition to the idea that he was actually explaining his right to testify. Again, Your Honor, my client – in order to make a knowing and intelligent waiver, you have to get advice from counsel. I mean, every Illinois Supreme Court case that actually – He did get advice. What you're saying is, not only did he get advice, but the trial counsel has to explain it adequately and go into analysis and why I don't think you should testify. I think he should at least have to give one reason, other than saying – So it's the one-reason rule you're asking us to adopt? That's an example, Your Honor. All I'm trying to get across is that a defendant can't decide – they can't make an intelligent decision not to testify just based on the idea that their attorney says, just don't testify, without explaining why. Particularly where you haven't explained to your counsel what your testimony would be. How can counsel even give that advice without knowing what my client's testimony would be? I don't think he can. I think that there are appellate court cases talking about you can't make a strategic decision not to call a witness if you haven't interviewed that witness. And that's what we have here. We have an unrebutted testimony that they never discussed it before trial. Knowing that, and my client specifically said that that was one of the reasons he waived his right to testify, is that I had never been prepared to testify. We had never discussed this right before. And so when it was sprung on me in the middle of trial, I didn't know what to do. Counsel was pressuring me not to testify, so I didn't do it. The record doesn't show that he made a knowing and voluntary and intelligent waiver of his right to testify. He said he felt like he had no choice because of his conduct. According to your argument, Mr. Bruno's client is having trouble just understanding some various concepts. And he thought he's not going to do well under cross-examination, and the state would be able to make him look bad, and he didn't think that putting him on the witness stand would be a good idea. How about that? Well, if counsel had expressed those reasons at the evidentiary hearing, which he did not, then that might show that he made a strategic decision. But, again, it's only my client is the one who can make that decision whether or not to testify. Counsel can decide whether he thinks it's a good idea, but only my client, only a criminal defendant can make that decision. They can't make that decision. They can make an intelligent decision not to testify if counsel doesn't know what they're going to say. And if counsel is brushing them off and just saying, don't testify, without explaining why.  But wouldn't it be good enough to say, my normal practice is, my normal experience is, defendants don't help themselves when they testify, and you in particular won't because you're having trouble even talking to me. That's not good enough. No, it's not, Your Honor. I don't think so. I mean, again, because it's not all about what counsel thinks. It's about what the defendant knows so he can waive his right. And, again, Your Honor, not to reiterate, but, you know, In Re Joshua, again, specifically says that it's defendant's counsel's responsibility to explain any advantages or disadvantages of invoking that right to testify. And here there's no evidence that counsel did explain the advantages or disadvantages. He just said, don't testify, it will harm your case. That's hortatory language, but now you're establishing it as reversible if you don't. Explain that again, Your Honor. That's hortatory language, meaning, in Joshua, the trial court says, yeah, this is a good thing to do, and now you're asking us to adopt that language as reversible error if the record doesn't affirmatively show it. Well, even apart from that case, Your Honor, there's really no dispute, I think, in the law that counsel does have a duty to advise their client about the right to testify. We also know that a criminal defendant from, you know, Illinois and U.S. Supreme Court cases has to make a knowing and intelligent decision to do so. And the person in best position to help our client, help a criminal defendant, make a knowing and intelligent decision is defense counsel. And here we have a case where they never discussed this right before trial, and they didn't discuss it even in the middle of trial. They didn't discuss it. It was brought up that he had the right, but they didn't discuss what his testimony would be. There's no indication in the record that they explained why it would be a bad idea to testify or why it would be a good idea to testify. It's not even clear from the record that counsel even knew what my client was going to say had he testified. So I think, and again, Your Honors, the circuit court didn't actually make a determination on this issue. So review of this is to note, but I think there's more than a preponderance of evidence here showing that counsel's conduct was objectively unreasonable when he failed to discuss the right to testify and the advantages or disadvantages of testifying. What do you think the defendant would testify to? Well, he gave testimony to that, Your Honor. So I'm moving on to the prejudice prong of this. My client indicated, again, just to remind you briefly what the facts of this case are, my client was driving a car that had drugs hidden inside. That's basically the extent of the state's evidence on the disputed knowledge element in the trial. The state's evidence that my client knowingly possessed those drugs is based solely on the idea that he was driving the car, that they were hidden. But there were no statements, there were no witnesses, there was no physical evidence. And it's not as though the drugs were sitting on the front seat of the car or something like that. They're inside the center console, underneath the tray, hidden underneath some paper towels. So my client said, he would have said, he didn't know about the drugs. They weren't his drugs. He wasn't a drug dealer. He never sold drugs. He worked two jobs 80 hours a week. And that other person had recently borrowed his vehicle. That's what he said he would have testified to. The trial court, the circuit court, in finding that that didn't meet the strickland prejudice standard, with respect to that court, did not apply the correct strickland prejudice standard. Strickland prejudice, as your honors are well aware, is reasonable probability of a different trial outcome. In this case, reasonable probability of a different outcome had my client been able to give that testimony. And the trial court, however, your honors, linked that idea to the notion that my client had to prove that a, quote, unanimous jury would have specifically found that the drugs left in his car were left there by someone who borrowed his car. That's what the court held. The court said that, basically said that was the strickland standard that my client needed to meet. And that, of course, is wrong. My client, the jurors were not required to even fully believe my client's testimony. If, after hearing my client's testimony, they were just unsure as to whether my client had knowing possession of the drugs, they would have to acquit. The jury didn't have to be unanimous. Even if just one or two jurors were unsure or either believed my client or were unsure whether the state proved the knowledge element of the offense, then it would have been a hung jury. They couldn't have all the jurors they needed to convict my client. So the circuit court didn't apply the law correctly. And there's nothing in the record for the circuit court to find that there isn't a reasonable probability of a different trial outcome. There's nothing in the record that directly contradicts the idea that my client didn't know about the drugs in the car. There's nothing in the record indicating that other people didn't borrow his car. And the state had the opportunity, to be honest. The state had the opportunity to cross-examine him. Are you raising a question of the insufficiency of the evidence in this case? No, this is a reasonable doubt. I'm sorry, this is not a reasonable doubt because this is ineffective assistance. Well, it's a strange argument to be what you've just argued. It sounds like you're arguing that the evidence was not sufficient. No, if I can make a point. Yeah, go ahead. Yeah, sorry. No, the point is, is that had my client testified in a case where the state's knowledge of it is fairly circumstantial, my client's the only one who could testify to his direct knowledge of whether he did know or did not know about the drugs. And there's nothing contradicting that. There's at least a reasonable probability of a different outcome had he been able to present his testimony, had he been able to properly exercise his right to testify. Okay. Thank you, Your Honor. Thank you, Your Honor. Mr. Derbyge? May I please report, counsel? I would like to focus also on the first issue in my oral presentation, whether a defense counsel was ineffective in terms of defendant's decision not to testify. First, I would like to just briefly talk about certain exchanges that occurred between defendant and defense counsel and defendant and the trial court after the state presented its evidence. Now, as has been pointed out, the defense counsel, or the argument of defendant, is that his being advised of his right to testify and so forth was ineffective because it occurred during trial. As this court has brought out, there is no authority to support that. Further, I would suggest that, in many cases, the appropriate time, the most appropriate time, for a defendant to make a decision as to whether to testify is after the state has presented its evidence. Obviously, to make this decision, a defendant should know what the state's evidence was going to be. The time that the defendant would know best the state's evidence is going to be is, of course, after the state has presented that evidence. As to the exchanges that I was referencing, in his affidavit attached to the post-conviction petition, defendant related that during trial, defendant said, I could testify if I wanted to. Your Honor brought that out. Defendant also testified at the hearing of the post-conviction petition. He told defendant, I would like to testify if you want me to. The following exchanges occurred between the trial court and defendant at trial after defendant indicated that defense counsel would not present evidence. Likewise, if you wanted to be a witness, no one can keep you from being a witness. You have a right to testify if you want to. You understand that, defendant? Yes. After that discussion, you have decided you are not going to testify. Defendant, yes. Is that correct? Yeah, I'm not going to testify. As indicated, defendant knew he had a right to testify, but no one could keep him from testifying, and that defendant exercised that right. So the issue is the legal implications of those factors. In People v. Freeburg, this court recommended that the trial court admonish the defendant concerning his right to testify and that only he could exercise that right. I will not go further with this case since one of the members of this panel wrote that decision. But the reason for this court's recommendation in Freeburg was to prevent the exact situation that we have here and add a contention that defense counsel was ineffective because of failing to properly admonish defendant. Freeburg was re-emphasized, was re-confirmed by this court's decision in People v. McCleary. Freeburg also was discussed with approval by the first district in People v. White. So under Freeburg, clearly the defendant did waive his right to testify given the court's admonitions. Next, I would like to briefly discuss a couple of the cases cited by defendant. We have heard counsel make several references to, I think it's Joshua B. Yes. In Joshua B., the issue was whether or not the trial court was required to admonish the defendant of his right to testify. Joshua B. did not concern whether or not trial counsel, defense counsel was ineffective. What defendant is arguing basically is because the court said in Joshua B. that the defense counsel should do this, that this means that counsel was ineffective if he didn't do it. Obviously, there's a difference, a fundamental difference, between saying that counsel should do something and that it is ineffective assistance if he did not. Similarly, one of the cases cited by defendant is People v. Teague. In Teague, the court did say that a defendant should discuss these things with defendant. However, this was in the context whether or not trial counsel or defendant should make the decision as to whether or not defendant should testify. It was not in the context of ineffective assistance. In Teague, the federal court concluded that the defendant was revised his right to testify, was advised they should not exercise that right, and did not protest. So as far as I can tell, defendant cites no authority holding that or stating that a defendant must be advised of the pros and cons of the strategic implications of whether or not to testify in order for there to be effective assistance of counsel. Finally, this court has already discussed the issue of prejudice, so I won't reiterate that statement here. However, I would suggest that defendant has failed to establish either the competence or the prejudice prong of the Strickland test. It's interesting, if I remember Smith correctly, the Supreme Court was less than enthusiastic about the idea of the trial court advising the defendant about his right to testify. Yes, this court, as you will also recall, did mention Smith in Freeburg and said that despite this, we think it's a good idea, and that's what the trial court did. Right. Thank you. Mr. Gerke, any rebuttal, sir? Yes. Go ahead. Just to touch on a few points, Your Honors. In Joshua v., what counsel admits is that the reason the court in that case found, the reason the court found that judges don't have a duty to respond to the advice about the right to counsel is specifically because it's counsel's duty to advise their client about that right. That quote I read to you in my initial argument was the court's holding that because it's trial counsel's duty, that's why. Well, let me ask it this way to be more explicit. Sure. In this case, the evidence is, well, the record shows clearly that the trial court advised the defendant of his right to testify, and he said, I don't want to testify. The testimony from your client also shows that his trial court advised him it's your right to testify, and he told him, he said, I don't think you should, and the defendant said, okay, I'm not going to testify. Your argument is that the trial counsel failed to properly explain all of this to him and evaluate why he was giving this advice so that your client's acceptance of this advice was not valid. Is that correct? That's a fair characterization, yes, Your Honor. Would we be the first court in the universe to so hold? Perhaps, Your Honor, but this is also, again, this is an extremely rare case where this is all spread of record. The reason I phrase it that way is you've done a good lawyer-like job of picking up hortatory language, that is from Joshua, and then saying the next step is the absence of what Joshua said, the trial court should do this, because it's reversible error, thereby essentially rendering null and void both the trial court's admonition and the trial counsel's statement that I don't think you should testify and the defendants agree. And this is a pretty big step, Mr. Gertie. If there's some case of authority out there that some court before us has so held, I would want to know it. I'm assuming that there isn't any. Well, first of all, Your Honor, I'd like to reemphasize that counsel, or rather my client, Tony Estrada Perez, explained why he waived his right to testify after he got received those admonishments. It wasn't because he agreed with counsel's strategy. It's because he felt he had no choice. But, again, I understand Your Honor's concern, but, again, this is a rare case. As Your Honor pointed out, Smith. In Smith, most of these cases arise when there is an issue on direct appeal. It's very rare that there's been an evidentiary hearing on this issue where there's unrebutted testimony. On direct appeal, it's presumed that counsel did perform that duty unless there's evidence to the contrary, and that's what happens in the majority of cases. So the idea that there's a reason why there's not a lot of cases that say this, Your Honor, is because – Opening the door, pretty wide open to where we're at, the great majority of cases we see now, trial courts are following the suggestions the court made in Freeburg to do this. Why aren't we now opening the door on a PC to say, you know, the trial court advised me of this, but my defense attorney never promptly explained the strategy behind his suggestion that I not testify, which was why I told the court what I did. Why would that be now open in hundreds of cases? Well, the only way that that would open hundreds of cases, Your Honor, is if you had a situation where trial counsel came to court and didn't rebut a single thing that the defendant said. I'm talking about the filing of a post-conviction petition, first stage, and all the rest of it, because now we're establishing a new criterion that no longer would be sufficient if the trial court explained this to the defendant and he said, I don't want to testify. Now we'd have to go beyond that to ask, exactly what did the defense counsel say in explaining to the defendant why perhaps he doesn't want to testify? Wouldn't that be now opening up the door in every case, first stage, state a cause of action, let's go to second stage and beyond? Well, Your Honor, no more than any other constitutional claim. Except up to this point, until this court would so hold, that wouldn't state a cause of action. If you were advised by the court about your right to testify and you said you wouldn't, we wouldn't go beyond that, would we? I suppose not, Your Honor. But again, this is a rare case where we actually, you know, I understand the floodgates argument. No, go ahead. I understand the floodgates argument, Your Honor, but again, I think it's going to be rare where we're going to have a case where we actually have an evidentiary hearing where counsel does not dispute anything that his client says. And so because I think this is a rare case, I don't think it's going to arise at all. Okay, well, thank you, counsel. Thank you, Your Honor. I'm going to advise you to take recess until next time.